Thank you. Good morning. And thank you for your endurance. I would like to reserve, to the best of my abilities, three minutes for rebuttal. My name is Kevin Monson. I represent the appellant and the bankruptcy detour, Mr. Joseph Parks. I have no new arguments or authorities to present this morning, but I do have a couple points that I would like to highlight. This case does not present any issue or any argument that asks this court to re-weigh or to overturn any decision of any disputed facts that were made by the trial court. Every issue presented in this case is a pure issue of law or, reflecting back to the prior matter, or the application of law to undisputed facts, which is a de novo review by this court. My four points that I would like to bring up. Number one, as a matter of law, this is a tort 101, there can be no fraud for the failure to disclose a fact that the other party already knows. In this case, the alleged non-disclosed fact is that the materials that were purchased from the plaintiff were delivered to non-regar properties. And according to plaintiff, because they had preliminary lien notices against only the regar properties, that when materials were delivered to non-regar properties and they didn't know about it, they were therefore unable to exercise their mechanics lien laws under California law. It was and always remains undisputed, and in large part coming straight out of the stipulations found in the pretrial order, that the materials at issue were delivered by plaintiff's own delivery employees to properties that were plainly marked with street addresses, while at the same time the plaintiff had in their own hands all of the addresses for all of the regar properties. That these properties were pointed out by Mr. Parks or by one of his employees who stood there, showed them where the plaintiff's own employee with his own forklift was to put the block material, the building materials, around already existing foundations, who then came back and picked up the pallets next to the constructed walls exactly where he had dropped off this material. There is, at the moment of delivery, the employee with the duty to deliver and to make note of where it was delivered, the plaintiff knew exactly where these materials were to be constructed or to be installed. Under law, a corporation only knows what its corporate employees know when they, in fact, are acting within the scope of their employment. In this case, the person, for the plaintiff, with the duty and responsibility to drop off materials for a materialsman, who then has the duty and responsibility to report, based on his scope of knowledge, where the materials were left, means that at the moment of delivery, in fact, the plaintiff knew exactly that these materials were to be installed on non-regar properties. This was a, oh, go ahead. Did the bankruptcy court conclude that there was no need to determine whether Park had a duty to disclose? Yes. The court specifically said it was not going to get to that issue because. In that case, is that a correct statement of the law? No, that is absolutely wrong. You're reading ahead. Jumping to my next issue, if you can't have fraud for nondisclosure unless by law there is a duty to disclose. So what did the court say about Park's duty? Park's, the court said I'm not going to make that determination ultimately because the court said Park's always intended to have these materials paid for by regar. And is that sufficiently explicit? No. Why not? Because if the court had found that there, notwithstanding that the court, if the court said we thought he was going to, it was going to get paid for anyway, the court may have said we don't find a duty to disclose. If that were the case, that would have thrown out the entire fraud under the Apt decision. But in fact, the court said because Mr. Park thought that this material was going to be paid for by regar, the court says I'm not going to make a determination. And without that determination, there is no way of knowing whether that essential element was found by the trial court. The second element, the second thing I wanted to point out, dealing with this specific nature, is that there is nothing in the court record, nothing, and nothing presented by the plaintiff at either trial or on appeal to show that had the court, the trial court, wanted to make a determination of a legal duty to disclose, there's nothing upon which the court could have found a duty. The Apt decision is very clear. It takes two things, two things to make a duty to disclose. One of them is, is that the person who supposedly doesn't know the fact doesn't know it. And in this case, Mr. Parks would have to know that the plaintiff didn't know that this was nonregar. And number two, there had to be either a special relationship or a custom in the industry to indicate that Mr. Parks should have told the plaintiff. Both of the elements fail. Both of them. Number one, the plaintiff knew exactly where this material landed. They knew where it was installed, and they had in their own hands the fact that these were nonregar properties. Number two, there was nothing, a complete vacuum presented at any time at trial or on appeal that said there was a special relationship or a custom in the industry for Mr. Parks to tell that that material was, that material was to be used on a nonregar property. Under the standard imposed by the, by the trial court, every contractor who bought a two-by-four at Home Depot has committed fraud for not telling somebody where that piece of wood was going to be installed. Third point I want to point out. As a matter of law, there can be no fraud for nondisclosure without an intent to commit fraud. The trial court plainly stated in its oral ruling that Mr. Parks always thought that this material would be paid for because of his understanding of his relationship. Before we go, I guess I didn't know where to interrupt you. How are you going to distinguish Citibank versus Aishai? It seems to me that Citibank versus Aishai is the Ninth Circuit's decision on a duty to disclose under these circumstances. Well, I recall from that decision that it lays out the elements, but the discussion of how There they said, I'll just read it to you because I don't want you to be stuck with it. The duty arose in that case because the debtor created a facade that concealed his fraudulent intentions of not paying back his debt. The facade resulted from him using cash advances from other credit cards to make the minimum payments on the debt he owed the creditor, even though he never intended to repay the debt. Now, to me, that's a pretty good analogy to what happened here. No, there is a significant difference. In that case, there was an affirmative attempt to hide the true fact. We have the absolute Affirmative attempt to hide the true fact is what I think the bankruptcy court judge found here your client did. I don't find that in any of the language of the trial court's decision. And I might add that the undisputed stipulated fact was that it was Mr. Parks who stood there in the open daylight and pointed at the properties that had an address on them and said, this is where they're to be installed. The worry that I have, it seems to me that what we have given Citibank is that Park repeatedly purchased through Angeles, his repeated purchases from Angeles of materials for Rieger Properties created the same kind of facade that Citibank puts together, shielding his intention of getting Rieger to pay for the materials on the part of the Lank Properties. I disagree with that analysis. All I'm trying to do is tell you, I looked at Citibank and now I tried to say, why is this not the same? This is not the same for two reasons. Number one, there was an absolute open. This isn't a matter of an argument saying that they could have discovered the truth on the alleged nondisclosed fact. In this case, they had as a matter of both fact and law, absolute knowledge that these properties were non-Rieger. Number two, there is absolutely nothing in the record. You're saying they had, without taking the evidence that was not put in the record, they had that absolutely? Yes. Not even including that evidence? Yes, sir. And this is how it fits in. I guess I'm trying to figure out how. Okay. What evidence do I have? Okay. The fact, the nondisclosed fact is these properties are non-Rieger properties. That is the entire basis. They're not claiming that we wouldn't have sold. Their entire claim for damages is based on we didn't lay down or serve a preliminary lien notice because we didn't know they were non-Rieger properties. That is the claim of damages. At the moment of the delivery of the property, there were two absolute undisputed, nobody has objected to facts. One, the plaintiff knew where the property was delivered or the materials were delivered. And number two, the plaintiff knew that those were non-Rieger properties. There is no hiding the ball. Yes, there was also the agreement that had been used for years between Mr. Parks and Mr. Rieger to have Mr. Rieger pay for materials and then offset that from Mr. Parks' monies. And that occurred in this case as well. But the lack, the absolute knowledge of plaintiff that the property was non-Rieger, number two, that there was no duty at all under the law for Mr. Parks to have opened his mouth. Remember, this is just simply a case of they didn't ask, we didn't say. We're doing business. They didn't ask, we didn't say. There is no question, and I look very carefully at this, because I generally suggest in my classes of business law that if you're going to have a misrepresentation, you've got one if you talk and one if you don't. And one if you don't, you've got to have certain things to make it happen. So there's no question I had to look straight at this issue. My worry is that Citibank is the pretext by which this bankruptcy court got to, and I'm still having a tough time with your explanation. Well, I think that the more complete, although you're making an analogy to the Citibank, the absolute law on the elements of establishing this duty comes out of Act, which says you must show two things, neither one of which exists under the facts of this case. I see that my time is flying. If you wanted that rebuttal, you better sit down. Otherwise, we'll take you right back. I appreciate it. And hence, with my last sentence, there can be no fraud if there were no damages legally connected to this case. In a matter of first impression, we have the facts of, it's not that they weren't paid, it's that they did not lay down a preliminary lien, and they, under that preliminary lien standard, are the ones who bear the burdens. That's why they have 20 days to simply ask who owns that land, and it was never done. Thank you. Well, I can still say to the Court, good morning. You can, barely. My name is John Cantor from Dicomac Gossett. I represent the appellee, Angels Bach. And as I listen to the Court ask its questions, relative to the duty aspect, on page, on the transcript record 90055, Judge Smith's announcement at that time, I think the appellant carries a little bit further than what the judge said, because she specifically said, beginning on line one, I will note that in reaching a determination that the defendant failed to disclose a material fact to the plaintiff, in my view, it was not necessary to make a determination whether there was any duty to disclose under state law. Right. That as between a material man and a supplier, and a contractor or subcontractor. She went on to hold, rather, I reviewed the facts as they existed, and the circumstances taking into account the totality of all the circumstances related to this case. Specifically, there is testimony from Mr. Parks that he really was not concerned about disclosing the ultimate use of the materials, because in his view, plaintiff will be paid in full anyway. His thought process about being paid in full anyway, arising from a proposed oral agreement between himself on the one hand, and Mr. Rieger on the other, that the Court found never existed. And, if I just might, the term she used, I think, was unpersuasive. And the definition of unpersuasive is similar to not believable. But she went on and said, again, it is this Court's view, based upon the record presented, that the defendant knew that, or certainly should have known, but based on his experience, the Court can conclude that he did know of the importance to the plaintiff of the destination and use of materials in question. Even construing the evidence strictly against the plaintiff, as the Court is required to do, the Court nonetheless concludes that the failure to disclose was intentional, was known, was intentional, coupled with the Court's finding that there was no agreement between the defendant and Mr. Rieger for the payment of the laying material by Mr. Rieger. Debtor failed to disclose with an intent to deceive so as to accomplish the goal of having Mr. Rieger pay for the amounts that would have been owed on the laying project. That last part of my quote is in 90056 to 90057. Furthermore, the issue regarding act that is so justifiably relied upon by the appellant and a, quote, duty, whatnot, that was addressed in the opinion of the bankruptcy appellate panel who addressed it specifically. And what we have to understand here, and this is maybe my fault, I have not made it clear, this transaction occurred during the heyday of building. When everything was building, this is out in the Empire County where these developers were building subdivisions. Mr. Rieger was building a subdivision. He sold a couple of homes to Mr. Lange within the subdivision. If you look at the delivery tickets that are part of the record, there was a central location where the block would be delivered for 81 homes to be built. And it is not in dispute that when a delivery man went to the central location, since they had the forklift, which was customer service, they would put the block where they wanted to. Did each delivery person, was it the same person? Did they go out there with all of the addresses they delivered over a year and a half? No, they don't. But they were always keyed to the one address. So in the bankruptcy appellate panel, the debtor argues that he had no legal duty to disclose further information to Angeles in this case. What is the further information? We have an address. We don't have the owner. We don't have who the general contractor is. We don't know if there's a lender on there. So just because we have an address, we don't know that it is owned by Wang or Joe Smith. According to the appellant, that would require us to go investigate based upon their nondisclosure, of which is not required for my client to do. There's no reason to investigate. So after we have a year and a half, we have numerous deliveries. The court says the debtor argues that he had no legal duty to disclose further information to Angeles in this case. That is contrary to applicable Ninth Circuit law as stated in Act. And they underline in the opinion, underline, one who fails to disclose to another a fact that he knows may justifiably induce the other to act or to refrain from acting in a business transaction is subject to the same liability to the other, as though he had represented the nonexistence of the matter that he was failed to disclose, if and only if he is under a duty to the other to exercise reasonable care to disclose the matter in question. They then go on and say one party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated if he knows that the other is about to enter into it under a mistake as to them and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts. In this case, because of the relationship between Mr. Parks and my client of purchasing and delivering masonry block over hundreds of thousands of dollars where information was previously given to them for the preliminary notice on rigor and given us the preliminary lien notice on the first-line property he did, that that relationship and his knowledge as he testified in trial that he knew the importance of a preliminary lien notice. He knew what Angelus Block needed. He just says, whoa, they didn't ask. So what happens? Instead of Angelus getting paid for the block, he gets paid for the block. And he doesn't tender it to Angelus Block. So why are we damaged? Because he did not disclose that information to us and because we couldn't put the owner on notice that we were the supplier of the masonry block, so they had no idea. As Mr. Lane filed in his declaration at the time of trial, he never received a call from us. He didn't know who we were. He was relying upon Parks to pay the mason supplier, which was us. The other thing I just would like to make one mention of, and it was in my brief. Go ahead. If you would respond to his contention as he began that it's undisputed fact, and given that it's undisputed fact and the judge is now making the decision that it's a question of law. No. I mean, what's undisputed fact? I'm not even sure what the undisputed fact is. Okay. I just wanted to he says the facts here are not disputed. There's no dispute about what they are. The judge just had to apply the law. That's a question of law. Okay. It's not a question of law here. And the undisputed fact, what he is saying is an undisputed fact, and I heard him argue. It's undisputed that we knew that a particular property was not Regers at the time of delivery. There's nothing in the record to that. What is in the record, the testimony of Tom Berry, who is the credit manager, when he was cross-examined by counsel and then redirected on my end, is when you have a subdivision, in order to protect your rights as a mechanical lien holder, all you need is what the tract is. And if you don't get paid, you basically prorate a block to each block that's on there, which is different than if somebody is building two or three homes, then you need to get the address. So the fact that there's an undisputed fact that we knew about Lange, that's not undisputed, because we didn't know about him. He may want to say we knew about him, but in order for me to know about him, I'd have to go investigate. But I'd just like to leave this and I'll open to any questions. But in my brief on page 28, relying on restatement of Torts 2nd, 528, a representation stating the truth so far as it goes, but what the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation. And that's what we have here. At best, he says, okay, deliver it over here to this address. That's only partially speaking. He should have said deliver it to this address because this is owned by Mr. to the other owner, Mr. Lange. But they never said that. Did the district court base its conclusion on that? Did the district court base it? Excuse me, the bankruptcy court? No, the bankruptcy court did not. The bankruptcy court basically decided it on nondisclosure because. So am I stuck with nondisclosure? You probably are because that was their decision. But in the nondisclosure issue, because that was argued in the reply brief here too, you know, where basically I was. I mean, I appreciate your argument here about different ways I might get to this. Yes. But it seems to me I've got the district court who's making a factual finding here. Right. And it seems to me I've got to either go there or I can't go. I hear you. I hear a lot of your arguments you've given here. I'm worried. I don't know whether I can even get there. Well, Your Honor, what it says here is in the issue, one of the things that kind of upset me in this is the reply brief, which I didn't have a chance to write opposition to. Right. But it was pretty incendiary towards me, if I could just say the least. But the court said on the nondisclosure aspect, I do know that in the closing briefs that defendant had argued that omission or silence or concealment is not considered by the defendant to have been an issue relevant in the trial. However, I did go back to the amended joint pretrial order and reviewed that the issues of fact were as agreed to by the parties. And I do note that under facts to be determined at trial, beginning on page six, paragraph seven, and then she goes and she cites the nondisclosure questions. And then she says, similarly, there's a paragraph nine relating to, so from the court's view, the issue of nondisclosure was indeed relevant for trial. Okay. And the nondisclosure here is they did not disclose that they were taking our masonry block from the Rieger property to the Lange property. And it's as simple as that. You have a little bit of time left. Thank you. I will speak very quickly. Three points. Number one, this is only a nondisclosure case. The standard that was read by counsel out of apt is absolutely the controlling law. It takes either special relationship or a custom in the industry. Those words and nothing like it ever showed up in evidence or in the court's oral ruling. The court said because of Mr. Park's experience, he should know that. That is not the standard that comes out of apt. That's nowhere near meeting the standard for nondisclosure. Number two, once property is delivered to a property, once material is delivered to a property, they keep saying, gee, did we have to do anything? Well, they could have looked in their own files. He keeps saying that the respondent keeps saying that the nondisclosure was not saying the word Lange. That's a red herring. The nondisclosure is not saying the words non-Rieger because it doesn't matter whether it was owned by Lange or you or me. If it was not Rieger, they would not have had, they would have known that they did not have a preliminary lean down. They had in their file every address, every address of the Rieger. That is in the record. And they knew at the moment they had the delivery, they knew the address. The respondent keeps saying, gee, you expected our delivery guy to have to do something, to have to make a note? When I questioned and pressed Mr. Berry at trial about that, he came up with the absolute truth, most honest statement they made in the whole trial. He said, I didn't care. I didn't even want to know where it was delivered. That. Thank you. I think you've made your argument, and I appreciate it. And we will now submit case 12-673.
judges: McNamee, Smith, Murguia